UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTINA E. LEE, *an individual suing on behalf of herself and other similarly situated persons,*<br><br>*Plaintiff,*<br><br>v.<br><br>MLB ADVANCED MEDIA, L.P.*, a Delaware Limited Partnership,* and SAN FRANCISCO GIANTS BASEBALL CLUB, LLC, *a Delaware Limited Liability Company,*<br><br>*Defendants.* | CASE NO: 1:21-CV-01719 |

**CLASS ACTION COMPLAINT**

Plaintiff Kristina E. Lee ("Lee" or "Plaintiff"), individually and on behalf of other similarly situated persons, files this civil action and alleges:

**NATURE OF ACTION**

1. Major League Baseball television ratings and game attendance have been plummeting for years. Eager to stay on their fans' minds, professional baseball team franchisees and the league flouted their obligations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and deployed intrusive marketing strategies to maintain fan engagement and bolster sales.

2. Plaintiff bring this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of Defendants MLB Advanced Media, L.P. ("MLB

Media") and San Francisco Giants Baseball Club, LLC (the "Giants") (MLB Media and Giants each a "Defendant" and collectively the "Defendants") in transmitting advertisement and telemarketing text messages to Plaintiff's cellular telephones and the cellular telephones of numerous other persons who are similarly situated using an automatic telephone dialing system ("ATDS") without prior express written consent and in violation of the TCPA.

## PARTIES

3. Lee is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of California, and the subscriber and user of a cellular telephone number ("Lee's Cell Number" or, as context requires, "her Cell Number") to which Defendants sent text messages in violation of the TCPA.

4. MLB Media is, and at all times relevant hereto was, a limited partnership organized under the laws of Delaware and a "person" as defined by 47 U.S.C. § 153(39). MLB Media's principal place of business and corporate headquarters are located at 75 Ninth Avenue in New York, New York ("MLB Media Corporate HQ").

5. The Giants are, and at all times relevant hereto was, a Delaware limited liability company and a "person" as defined by 47 U.S.C. § 153(39).

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. *See* 47 U.S.C. § 227(b)(3).

7. MLB Media is subject to personal jurisdiction in New York because its MLB Corporate HQ are located in this state and because it initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing text messages from within this state in violation of the TCPA.

8. The Giants are subject to personal jurisdiction in New York because it initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing text messages from within this state in violation of the TCPA, including to Lee's Cell Number.

9. Venue is proper in this judicial district under each of the bases for venue set forth in 28 U.S.C. § 1391. Venue is proper in this judicial district pursuant to § 1391(b)(1) because MLB Media resides in this district. Venue is also proper in this judicial district under § 1391(b)(2) because a substantial part of Defendants' actions and omissions which gave rise to the claims asserted in this action occurred here. In addition, venue is proper in this judicial district under § 1391(b)(3) because all Defendants are subject to this court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### a. *Defendants' Integrated Text Message Marketing Campaign*

10. MLB Media is a limited partnership in which the club owners of Major League Baseball ("MLB") teams are limited partners. MLB Media operates as the internet, telephone, and media marketing arm for MLB.

11. Given that MLB club owners, including the Giants, provided MLB Media's initial capital contributions, MLB Media is under constant pressure to perform.

12. Desperate to help drive the fan engagement that the MLB club owners so critically rely on, and to combat nosediving ratings and declining fan engagement, MLB Media and the club owners, including the Giants, began skirting their obligations under the TCPA and employed intrusive and illegal telephone marketing strategies.

13. MLB Media registered under its name at least the following short code telephone

numbers, all registered to the MLB Media Corporate HQ: 42086, 88019, 31826, 76925, 99778, 80899, 66128, 71532, 82810, 97475, 49887, 78030, 69478, 42951, 42682, 244769, 91347, 23215, 61592, 78469, 48593, 88932, 51655, 26099, 37956, 38955, 41623, and 60946.

14. The shortcode telephone numbers listed in the preceding paragraph were each leased, purchased, or otherwise acquired by Defendant MLB Media and are each an "MLB Media Shortcode" and collectively the "MLB Media Shortcodes."

15. The MLB Media Short Code registrations were part of MLB Media's scheme to gain access to baseball fans' cell phones and bombard them with advertisements and telemarketing pitches.

16. The MLB Media Shortcodes were obtained from Telcordia Technologies, Inc., a company that assigns these number resources.

17. Short code telephone numbers are used to send text messages *en masse* from telephone dialing systems that have the capacity to produce or store telephone numbers using a random or sequential number generator and to send such messages in an automated fashion without human intervention.

18. With control over the integrated network of short code dialing numbers that make up the MLB Media Shortcodes, MLB Media encourages respective team managements to develop and copyright text message marketing campaigns for each of the teams. These text message promotions are developed by the teams, in many instances with the help of MLB Media. Once a promotion or advertisement is finalized, it is provided to personnel employed by MLB Media and working out of the MLB Media Corporate HQ. MLB Media then causes it to be sent out to consumers via text message, *en masse*, from the MLB Media Corporate HQ using MLB Media Shortcodes with technology that has the capacity to capacity to store or produce telephone numbers

to be called, using a random or sequential number generator as well as the capacity to dial those numbers without human intervention.

19. MLB Media's marketing tactics walk consumers into an onslaught of marketing messages delivered straight to their cell phones without regard to whether the text recipients are trying to drive safely, pray in peace, focus attention on their jobs or families or otherwise attempting to seek solitude in their homes or elsewhere.

### b. *The Giants' Participation in MLB Media's Integrated Text Marketing Scheme*

20. The Giants operate a San Francisco-based major league baseball team in the Western Division of the American League.

21. The Giants operate an advertisement and telemarketing campaign that involves sending advertisement and telemarketing text messages to consumers' wireless telephones without first obtaining their prior express written consent.

22. Through MLB Media, the Giants use the MLB Media Shortcodes 99778 and/or 80899 to send illegal advertisement and telemarketing text messages to consumers and to further MLB Media's and the Giants' marketing campaigns. Advertisement and telemarketing text messages from Defendants that promote the Giants are sent from MLB Media Shortcodes 99778 and/or 80899.

23. Once the Giants' text promotions or advertisements are finalized, they are provided to personnel employed by MLB Media and working out of the MLB Media Corporate HQ. MLB Media then causes the Giants' text promotions to be sent out to consumers via text message, *en masse*, from the MLB Media Corporate HQ using MLB Media Shortcodes with technology that has the capacity to capacity to store or produce telephone numbers to be called, using a random or sequential number generator as well as the capacity to dial those numbers without human

intervention.

### c. *Lee Receives Unsolicited Advertisement/Telemarketing Messages from Defendants*

24. Defendants sent to Lee's Cell Number, *inter alia*, the following unsolicited messages from MLB Media Shortcode 99778 through the use of an ATDS:

   a. May 1, 2019:

   **IN HONOR OF LEVI'S 501 DAY, THE GIANTS & LEVI'S OFFER A 24 HOUR FLASH SALE $5.01 TICKETS TO SELECT GAMES https://atmlb.com/2vqT1q7 Text STOP to cancel.**

   b. July 23, 2019:

   **Last day of the Junior Giants Stretch Drive! Support local leagues and donate $44 for a McCovey bobblehead. https://atmlb.com/2LpyYCg Text STOP to Cancel**

   c. December 19, 2019:

   **$10 Tickets for 2020! Grab the perfect stocking stuffer for the Giants fan on your list. https://atmlb.com/2rRg0wt Text STOP to Cancel.**

   d. January 14, 2020:

   **Get your Giants Opening Day Pack - 4 games for $89. Buy now: https://atmlb.com/2skobkT Text STOP to Cancel.**

   e. February 6, 2020:

   **Your Visa Presale for 2020 Giants Single Game Tickets Starts Now https://atmlb.com/3bcPyyY Text STOP to Cancel.**

   f. July 28, 2020:

   **Opening Day at Oracle Park! Tune in tonight at 6 PM on NBC Sports Bay Area to catch all of the day's festivities https://atmlb.com/39vANHd Text STOP to Cancel.**

   g. August 17, 2020:

   **2020 Giants Special Events now on sale- Each event includes**

       **private virtual event & exclusive item mailed to you. https://atmlb.com/31TvFcw Text STOP to Cancel.**

  h. August 21, 2020:

       **The Junior Giants Stretch Drive starts today! Donate $50 for a commemorative set of pins! https://atmlb.com/3l2rV14 Text STOP to Cancel.**

  i. September 5, 2020:

       **Giants set to face Madison Bumgarner tonight at Oracle Park. Tune in tonight at 6:15 PM. https://atmlb.com/3jG3FQO Text STOP to Cancel.**

  j. September 19, 2020:

       **Enter to win on Fan Appreciation Day presented by Coors Light. No purchase necessary. See official rules at https://atmlb.com/2RKMPEh. Text STOP to cancel.**

  k. September 22, 2020:

       **Today is National Voter Registration Day. To register and get information visit https://atmlb.com/32S0mR3. Be Giant. VOTE! Text STOP to Cancel.**

  l. October 19, 2020:

       **TODAY is the last day to REGISTER TO VOTE. Register and get information at https://atmlb.com/3dwNWBK. Be Giant. VOTE! Text STOP to cancel.**

  m. October 22, 2020:

       **Bid on your favorite celebrity cutout from the 2020 Giants season. Celebrity Cutout Auction ends Friday, 10/23. https://atmlb.com/35jAGg5 Text STOP to Cancel.**

25. The messages described immediately above were received by Lee on her Cell Number from the MLB Media Shortcode 99778.

26. Lee's Cell Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227 (b)(1)(A)(iii).

7

27. When entered into an internet browser, the links within the text messages that Lee received from the MLB Media Shortcode 99778 bring up a website that offers the sale of baseball tickets and other merchandise.

28. The source of each of the unsolicited text messages sent by Defendants to Lee's Cell Number was 99778, which is a short code owned or leased by or on behalf of Defendants or Defendants' agent(s) or affiliate(s), and is used for operating Defendants' text message marketing campaigns, including the sending of text messages telemarketing and advertising various of Defendants' goods and services.

29. All telephone contact by Defendants and/or their affiliates, subsidiaries, or agents of Defendants to Lee's Cell Number occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing text messages were sent from 99778, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendants or their agents to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the unsolicited text messages were written in a generic and impersonal manner.

30. The unsolicited text messages sent to Lee's Cell Number did not constitute calls made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

31. Defendants' text messages were sent to Lee without first providing her with disclosures to which she entitled under the TCPA, the messages invaded Lee's privacy, intruded upon her seclusion and solitude, constituted a nuisance, and wasted her time. Further, Defendants' unsolicited text messages caused Lee to incur tangible harms such as loss of cell phone battery life.

32. Plaintiff has no reason to believe, that absent an injunction from this Court, Defendants would voluntarily stop violating the TCPA. Plaintiff's experiences are similar to thousands (if not hundreds of thousands or potentially even millions) of other persons throughout the United States.

### *f. MLB Media Runs Similar Text Blasts Nationwide*

33. The advertisement and telemarketing text messages that Lee received are part of a common course of conduct and practice developed, orchestrated, and managed by MLB Media.

34. A non-exhaustive recitation of MLB Media's nationwide and unlawful texting practices, through which MLB Media sent advertisement and telemarketing text messages to consumers such as Lee and to numerous other similarly situated persons, is set forth below:

   a. MLB Media used MLB Media Shortcode 99778 to send the following advertisement and telemarketing text messages: on March 4, 2018 ("WATCH the Giants vs. Dodgers"); March 22, 2018 ("Watch LIVE"); April 6, 2018 ("Game to start at 3:05 p.m."); April 16, 2018 ("Run the 5k/10k/half marathon on 9/9/18 to get [a bobblehead]"); May 10, 2018 ("Watch Giants"); August 11, 2018 ("Limited Tix available"); November 27, 2018 ("Get your Opening Day and Yankees tickets"); January 8, 2019 ("receive a shirt"); February 9, 2019 ("Tickets on sale now"); and February 21, 2019 ("Buy now").

   b. MLB Media also used MLB Media Shortcode 88019 to send similar advertisement and telemarketing text messages on September 14, 2019 ("chance to purchase 2018 postseason tickets"); January 25, 2019 ("Secure your 8- or 14-game ticket pack"); and on February 22, 2019 ("Secure your Cubs tickets").

   c. MLB Media likewise used MLB Media Shortcode 37956 to send advertisement and

telemarketing messages on March 28, 2018 ("Get to Marlins Park early"); April 2, 2018 ("Tix still available"); April 9, 2018 ("Join us for a division-rival matchup"); April 13, 2018 ("Tonight is Burger & Beer Friday at Marlins Park!"); and May 24, 2018 ("Buy: https://atmlb.com/2Lqhr9T").

d. MLB Media similarly utilized MLB Media Shortcode 244769 to send advertisement and telemarketing messages on July 27, 2018 ("Marvel Super Hero ™ Night"); July 31, 2018 ("White Sox Bleachers & Brews: 1 bleacher ticket + 2 beers for just $22"); August 8, 2018 ("Bobbleheads presented by Wintrust, first 20K"); and August 11, 2018 ("jackpot is already at $20,000- - Sales end at the end of the 6th inning").

e. Consistent with MLB Media's common course of conduct and practice, MLB Media used MLB Media Shortcode 71532 to send the following advertisement and telemarketing text messages on May 10, 2018:  ("$10-seats for his next home start");  and May 22, 2018 ("Mariners Flash Sale: $10-Bleacher Sears").

f. MLB Media used MLB Media Shortcode 42951 to send the following advertisement and telemarketing  text messages: "5/19 is Wine Night at The Big A" (May 18, 2018); "Join the Halos at The Big A on 6/3 for Family Sunday" (May 30, 2018); and "Fans get a Trout Birthday shirt" (August 3, 2018).

g. Consistent with MLB Media's common course of conduct and practice, MLB Media used MLB Media Shortcode 41623 to text consumers and urge them to purchase baseball tickets by promoting their scarcity: "Limited Dodgers tix left" (April 20, 2018).

h. Consistent with MLB Media's commom course of conduct and practice,  MLB

10

        Media sent advertisement and telemarketing text messages using MLB Media Shortcode 26099 to offer fans a chance to "See the Ring and Championship Fan Collection NOW https://atmlb.com/2JfzBdn") (April 3, 2018). When entered into an internet browser, the link within the text messages sent from the MLB Media Shortcode 26099 brings up a website offering, *inter alia*, subscriptions to MLB TV, the sale of baseball tickets, and the sale of MLB trademarked merchandise.

        i.    Through MLB Media's common practice and course of conduct, MLB Media sent the following similar advertisement and telemarketing text messages: "Tix still available" (April 2, 2018) (MLB Media Shortcode 41835); "Use your refund for 53% off Nats tix" (April 17, 2018) (MLB Media Shortcode 91347); "Tune in to tonight's game" (September 7, 2018) (MLB Media Shortcode 38955); "4 tix, parking & 2 OF play passes for $49" (April 26, 2018) (MLB Media Shortcode 42682); "Tickets are $10 and up" (May 17, 2018) (MLB Media Shortcode 66128); and "Yankees are coming to Oracle Part this weekend! Tickets available – starting at $49 https://atmlb.com/2UVwpNm") (April 25, 2019) (MLB Media Shortcode 80899).

35.    MLB Media sent or caused to be sent the above and similar advertisement and telemarketing text messages to consumers from each of MLB Media's Shortcodes.

36.    The text messages sent by MLB Media from the MLB Media Shortcodes constitute advertisements defined by 47 C.F.R. § 64.1200(f)(1) because they advertised the commercial availability of MLB tickets, game programming, and other merchandise.

37. The text messages sent by MLB Media from the MLB Media Shortcodes constitute telemarketing defined by 47 C.F.R. § 64.1200(f)(12) because they were initiated to encourage the purchase of MLB tickets and other goods and services.

38. The source of each of the text messages sent by MLB Media from the MLB Media Shortcodes were all five to six digit short code telephone numbers (as set forth above), which are short codes owned or leased by or on behalf of MLB Media or MLB Media's agent(s) or affiliate(s), and are used for operating MLB Media's and its agents' or affiliates' text message marketing campaigns, including the sending of text messages to Plaintiff and others to market and advertise various of MLB Media's and its agents' or affiliates' goods and services.

39. All telephone contact by MLB Media and/or its affiliates, subsidiaries, or agents, including the Giants, occurred via an ATDS as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing text messages were sent from the MLB Media Shortcodes, which are short code telephone numbers used to message consumers *en masse*, and because the hardware and software used by MLB Media or its agents to send such text messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the text messages were all written in a generic and impersonal manner thereby demonstrating their automated dissemination.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this lawsuit on behalf of herself and as a class action on behalf of all other similarly situated persons pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff seeks to represent the following "Classes":

> a. As it relates to MLB Media:
>
> All persons within the United States who, without having provided the required prior express written consent, received a text message,

sent by or on behalf of Defendants or an affiliate, subsidiary, or agent of Defendants from any MLB Media Shortcode.

b. As it relates to MLB Media and the Giants:

All persons within the United States who, without having provided the required prior express written consent, received a text message, sent by or on behalf of Giants or an affiliate, subsidiary, or agent of Giants from short code telephone number 99778.

41. Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of either of Defendants, and any of Defendants' legal representatives, assigns or successors. Also excluded is any judge presiding over or attorney appearing or participating in this case and any member of any such person's immediate family. Members of the Classes are referred to as "Class Members."

42. Plaintiff reserve the right to modify the definition of the Classes or to add, when appropriate, one or more issue classes under Fed. R. Civ. P. 23(c)(4) or subclasses under Fed. R. Civ. P. 23(c)(5).

43. Plaintiff and all Class Members have been impacted and harmed by the acts of Defendants and/or their agents, affiliates or subsidiaries.

44. Plaintiff seeks injunctive relief and monetary damages on behalf of herself and the Classes.

45. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

46. Upon application by Plaintiff's counsel for certification of the Classes, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, and/or judicial economy.

### *Numerosity*

47.     The number of persons within each Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impracticable. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

### *Typicality*

48.     Plaintiff received at least one text message from Defendants sent via an ATDS without providing her "prior express written consent" to receive "advertisement or "telemarketing" text messages via an "ATDS" within the meaning of the TCPA. This is the same harm suffered by the absent Class Members. Consequently, Plaintiff's claims are typical of those of the other Class Members she seeks to represent, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members she seeks to represent.  Plaintiff and all Class Members have been impacted by, and face continuing harm resulting from, Defendant's violations and/or misconduct as alleged herein.

### *Adequacy of the Plaintiff*

49.     As a proposed class representative,  Plaintiff has no interests that are adverse to, or conflict with, the interests of the absent Class Members and she is able to fairly and adequately represent and protect the interests of the Class Members.  Plaintiff has raised viable claims of the type reasonably expected to be raised by the Class Members and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this complaint to add additional representatives of the Classes and/or to assert additional or amended claims.

***Competency of Class Counsel***

50.     Plaintiff retained and is represented by experienced, qualified and competent counsel committed to prosecuting this action. These counsel are experienced in handling complex class action claims, including class actions alleging TCPA violations.

***Commonality and Predominance***

51.     There are well-defined common questions of fact and law that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions do not vary from Class Member to Class Member, may be determined without reference to the individual circumstances of any Class Member, and include (but are not limited to) the following:

   a. Whether Defendants caused to be transmitted, advertisement or telemarketing text messages to Class Members' cell phones;

   b. Whether Defendants were transmitted using an ATDS;

   c. Whether Defendants can meet their burden in proving that they obtained the Plaintiff's and the Class Members' prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send them advertisement and/or telemarketing text messages with an ATDS;

   d. Whether the complained-of conduct was knowing and/or willful;

   e. Whether Defendants should be enjoined from engaging in such conduct in the future.

52.     The foregoing issues predominate this case. Because Defendants' enrollment mechanism is automated and uniform for all absent Class Members, there are no overarching individualized issues that warrant denial of class certification. The foregoing issues may also be

individually certified as issue classes under Fed. R. Civ. P. 23(c)(4).

*Superiority*

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if Class Members could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts for individual litigation of numerous cases to proceed. Individualized litigation also presents the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of these claims as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. Plaintiff does not anticipate any difficulty in the management of this action as a class action.

54. Superiority is also present here because class wide relief is essential to compel compliance with privacy protection statutes such as the TCPA. And courts recognize that Congress's intent in providing a private cause of action was to incentivize aggrieved individuals to act as private attorneys general, a Congressional goal that can only be readily achieved through the class action mechanism. The interest of Class Members in individually controlling the prosecution of separate claims is minor because the statutory damages in an individual action for violations of the TCPA are unlikely to be substantial, especially when compared to the costs of litigation. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute

to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers. Indeed, Defendants have been regularly contacting the Class Members, albeit unlawfully, using records already in their possession.

55. Additionally, the prosecution of separate actions by individual Class Members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

56. Defendants and/or any of their affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate.

57. Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE TCPA (47 U.S.C. § 227)
*(On Behalf of Plaintiff and the Classes Against Defendants)*

58. Plaintiff hereby incorporates paragraphs 1-57 as if fully stated here.

59. The foregoing acts and omissions constitute violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

60. Because of the Defendants' violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA

in the future.

61. Plaintiff and all Class Members are also entitled to, and seek, an award of $500.00 in statutory damages for each text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CLAIM FOR RELIEF
## KNOWING AND/OR WILLFUL VIOLATION
## OF THE TCPA (47 U.S.C. § 227)
*(On Behalf of Plaintiff and the Classes Against Defendants)*

62. Plaintiff hereby incorporates paragraphs 1-57 as if fully stated here.

63. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

64. Because of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

65. Plaintiff and all Class Members are also entitled to, and seek, treble damages of up to $1,500.00 for each message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

66. Plaintiff seeks the following relief and judgment:

   a. An order certifying this action to be a proper class action pursuant to Fed. R. Civ. P. 23, establishing the Classes and any additional subclasses as alleged herein or as the Court deems appropriate, finding that the Plaintiff is a proper representative of the Classes, and appointing Plaintiff's counsel as counsel for the Classes;

   b. Injunctive relief prohibiting Defendants from violating the TCPA in the future;

   c. Statutory damages under 47 U.S.C. §227(b)(1) for Plaintiff and each Class Member

in the amount of $500.00 for each and every violative text message;

d. Treble damages for Plaintiff and each Class Member of up to $1,500.00 for each and every violative text message as a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1); and

e. An award of attorneys' fees and costs to counsel for Plaintiff and the Classes.

## DEMAND FOR JURY TRIAL

67. Plaintiff demands a trial by jury.

March 1, 2021

Respectfully submitted,

CAREY RODRIGUEZ MILIAN, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

By: /s/ David P. Milian
John C. Carey
jcarey@careyrodriguez.com
David P. Milian*
dmilian@careyrodriguez.com
cperez@careyrodriguez.com
Ruben Conitzer*
rconitzer@careyrodriguez.com
ecf@careyrodriguez.com

*Applications for pro hac vice admission forthcoming*